The next case call for oral argument is People v. Grames. People v. Grames The case comes before you today on review of the trial court's dismissal of Mr. Grames' post-conviction petition at the second stage of post-conviction proceedings. We are asking that this court grant Mr. Grames an evidentiary hearing because he has made a substantial showing of a constitutional violation where the state committed a discovery violation. Mr. Grames was tried in August of 2004 for the offense of unlawful possession with intent to manufacture methamphetamine. He had already been tried for the offense in June of 2002 but was granted a new trial by this court because the jury at his first trial was improperly informed that he was a convicted felon, which was an element of another offense with which he was charged. Prior to Mr. Grames' second trial, his new defense counsel made a motion pursuant to Supreme Court Rule 412 for a list of all physical property in the possession of law enforcement officials and the location from which the property was required and any reports made by law enforcement authorities pertaining to this property. The prosecutor, who also represented the state at the first trial, responded that the discovery had not changed since the first trial but that he would update it if necessary. Two documents that were provided in the discovery from the first trial were the search warrant evidence log and the search warrant inventory, which mentioned two glass jars and their locations. It was later discovered that one jar contained methamphetamine and the other jar did not contain meth but it did have Mr. Grames' fingerprint on it. Now, the discovery violation occurred when the state learned in preparing for the second trial that witnesses would be changing their testimony to say that the two jars had been mislabeled and were therefore found in opposite locations. The result of this mix-up was that the evidence at the second trial would show that the meth was now actually in the jar containing Mr. Grames' fingerprint. This was a discovery violation because, by virtue of his opening statement, we know that the prosecutor knew about the change in testimony before trial, and yet he failed to update or correct the warrant logs or otherwise disclose this evidence to defense counsel prior to trial. This meant that defense counsel prepared for trial based upon information that was submitted by the state that was incorrect. The purpose of discovery is to prevent situations of a trial by ambush and to inform both parties of the evidence that they will be facing in court. If a party is permitted to submit information that is different than what they will present in court, then this defeats the purpose of discovery. When was the exact point at which this information came out? Well, it was during the prosecutor's opening statement. He was just explaining the evidence that they were going to present, and he just mentioned, we are going to present evidence that the defendant's fingerprint was found on the jar of methamphetamine. At that point in time, defense counsel made an objection, but it was more so to the fact that he thought that the information was incorrect. It wasn't to the fact that this was a discovery violation. It wasn't to the fact that this information had not been submitted prior to trial or corrected prior to trial. It was more that he thought, I guess, the prosecutor was confused in what the evidence was going to show. Isn't it correct that there were other witnesses that testified that the defendant's fingerprints were on the small square jar? Yes. There were at least two officers who testified at the second trial that the defendant's fingerprints were found, or not that the fingerprints were found on the second jar, but rather that the second jar, which was a square jar, was found in the cabinet. And we know that the jar in the cabinet was the one that contained the meth. The question was, which jar was it? And we always knew that the square jar, the smaller jar, was the one with the fingerprints on it. So it was just a question of where the jars were found because that determined where the meth was. This testimony was actually particularly relevant and harmful because it was the only thing that provided a direct physical link between Mr. Graves and the meth. The other evidence consisted of testimony of a confidential informant and the fact that the drugs and drug-related items were found on Mr. Graves' property and, therefore, in his constructive possession. This was the same evidence that this court found to be not overwhelming on direct appeal after his first trial. The prosecutor claimed that there was no surprise. This was during his opening statement when defense counsel made the objection. The prosecutor said there's no surprise because the mistake is apparent from the pictures that were presented at the first trial. So he was implying that defense counsel should have seen and looking at the pictures that the testimony had been incorrect. But I find this explanation to be highly suspect because the pictures were viewed by various individuals at the first trial, and if no one noticed, then I don't think that defense counsel could have been expected to notice on his own. I would encourage the court to view the pictures of the jars to see if you can distinguish from the pictures the jars from one another, especially number 36, which is the picture of the jar in the cabinet that contained the meth. I next want to talk about defense counsel's response to this discovery violation and how I don't think that the discovery violation was remedied by his cross-exam. Defense counsel had several options when he was confronted with the discovery violation. He objected to the statement on the basis it was wrong but did not object to the fact that he was not given the information prior to trial. Supreme Court Rule 415G provides several sanctions for when a party has failed to comply with discovery rules, ranging from ordering that the evidence be disclosed, granting a continuance, excluding the evidence, or entering such other order as it deemed just under the circumstances, including a mistrial. In this case, defense counsel did not even request a continuance to investigate the change in testimony, and he did not request to at least have the fingerprint evidence excluded, and he did not request a mistrial. Instead, he just accepted the court's ruling that he could cross-examine the witnesses with their prior testimony. I think he could have at least requested a continuance to prepare for trial in light of the new testimony. In this respect, I think that counsel's performance fell below an objective standard of reasonableness, and I think that an evidentiary hearing is needed to determine exactly what defense counsel's strategy was in not requesting some sort of sanction. By questioning defense counsel at this hearing, it could be determined whether he knew that this was a discovery violation and that he could request sanctions, and if he did know that, why he didn't request sanctions, and whether he believed that he had sufficient time to prepare for cross-exam. I think there are already a few indications in the record that his cross-exam was not as thorough as it could have been, and I gave one of those examples in my reply brief. The reason or the explanation that was given by these law enforcement officials for why they went through the first trial without noticing the mix-up is because they claimed that they were testifying based only on the jar's numbers, but if you go back to the transcript from the first trial, you'll see that at least one of those witnesses was asked, while he was testifying, to take one of the jars out of the bag and hold it and was asked, is this the jar that you found here, and he says yes. Now, the other jar, by the time of the first trial, had been broken, so it's kind of difficult to say that he could identify that jar, but at least the other one. And I also think that we need to put these two witnesses on the stand and ask them how they are so certain the second time around that the jars were switched. They never really said how they were able to distinguish the jars. I mean, whether it was by their shape, their size, the fact that one had a lid and the other one didn't, or the amount of liquid in the jars, they just kind of say, well, no, we're sure that this was the one that was in the cabinet. But if defense counsel had known what physical traits of the jars that the witnesses were using to tell the jars apart at the second trial, then I think he could have impeached them for not recognizing the mix-up every time the jar was described in the first trial, not just when the jar itself was shown or pictures of the jar were shown. So the first time that the defense attorney finds out that there's a mix-up is at trial? Is at trial, is during the opening statement, yes. And the trial court did nothing to try to inquire as to how that could just be magically happened just before trial? Not much. What he did do, he said, is this correct, the prosecutor? Like, you know, how is this, you know, that you are going to present this new testimony? And the prosecutor said, well, in preparing for trial, we realize they discovered that they were mistaken. They went to re-prepare for the second trial. They looked at the pictures, and they said, wait a minute. These jars are switched. And so he said, my thoughts on this at this point are I'm going to let you cross-examine them with their prior testimony. He said, I'm going to let him say at his opening statement what he thinks he can prove, and then you can cross-examine them later. I just think ultimately the explanation for this mix-up makes little sense, and it should have been more detailed. And I don't think that we can just assume the state's explanation is correct because I don't think it's been subjected to a thorough cross-exam. One final point, I think it's important to note that an evidentiary hearing is needed to address these questions that were raised by the discovery violation and ultimately to determine whether the defendant was unfairly prejudiced by the discovery violation. But at this stage, we're not required to establish prejudice or conclusively show that the defendant's constitutional rights were violated. Instead, we only have to make a substantial showing of a constitutional violation, and I believe that that has been shown with the discovery violation. Based upon the prosecutor's failure to inform defense counsel that the information submitted in written discovery was incorrect, that there would be a change in testimony regarding a significant piece of physical evidence. I believe that Mr. Grames has made a substantial showing of a constitutional violation, and we ask that this case be remanded for a third stage evidentiary hearing. Thank you, counsel. Thank you. Counsel? May it please the Court? Counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. Stripped down to its well-pleaded facts, the only thing that the defense petition really sets forth is that the police officers changed their testimony at his second trial and that the defense counsel did not request a continuance when he found out about that changed testimony. The testimony at both trials was that the round jar contained a large amount of methamphetamine liquid and the smaller square jar contained a small amount of liquid which did not contain methamphetamine. And, Justice Waxman, as you pointed out, it wasn't just these two police officers that said that. At the second trial, Police Officer Brian Davis, who did not testify at the first trial, testified that People's Exhibit 16 was a square jar with a white lid and was full of liquid. The fingerprint expert testified that the smaller glass jar had defendant's fingerprints on it. Mr. Rose, one of the witnesses, testified that the square jar with the white lid in the cabinet was the jar with methamphetamine. And none of that can be deemed as a surprise. These two other witnesses knew that the jars were mixed up, but the police didn't? Who were the two other witnesses, and how did they know, and why didn't they tell the prosecutor? And then the prosecutor revealed that before the beginning of the trial. The two police officers did not realize the error. The witnesses that I just described there, they were describing the shapes of the jars, that the square jar had this and the round jar had that. The two police officers whose testimony changed did not discover the error until immediately before trial. It was actually in preparation for their testimony for this trial that they discovered the error. They were looking at pictures and realized the error at that time. So it was not until the last second. Right, and then the defense attorney didn't ask for a continuance, and you contend that even if he asked for a continuance, there was nothing he could have done. Well, how do we ever know that? What could he have done? I mean, basically, if you look in defendant's opening brief and also in the reply brief, we have all of these postulations about the questions that the trial counsel could have asked the two officers about their changed testimony. But it all comes down to this. How come you didn't notice this before? That's the only question that really comes up in this is, why didn't you notice this before? When you read the record in this case, when you see the cross-examination that the defense counsel gave these two police officers, I found it very thorough and very effective, and he just absolutely hammered away at them about, well, you said it was that jar of the last round, and now you say it's this jar? How could you have made that mistake? When was defense counsel entitled to know about, to be informed of the discovery of this mistake? I agree that there was a surprise that occurred at this trial that should not have occurred, but that's not the question that's before this court. The question is, was it error to not request a continuance, and was there a discovery? And both of those questions kind of revolve around the same thing, which is, what could the defense attorney have done if he had known earlier? Well, inherent, I understand your position on that, but inherent in examining that might be a question of whether defense counsel had enough time to consider what is to be done in light of this new information. You know, there's an old adage that I've lived by for 35 years, that no judge can anticipate the moves of a good trial attorney whose back is against the wall. And if you only know five minutes beforehand that your back is against the wall, there's not too much time to figure out a reasonable trial strategy with any likelihood of success. Well, that's not exactly the situation that we have in this case. In this case, we have opening statements on day one, and then before either one of these police officers were brought to the stand. Yeah, but he was informed. He found out on day one in opening statements. But he had – the only thing that can be used to – I mean, these police officers are going to testify to what they're going to testify to. And the only thing to do is to impeach them with their prior testimony. Now, Officer Bray's testimony at the first trial was 80 pages long. I'm sorry, it was what? Eighty pages. Okay. And Worker's testimony at the first trial was 14 pages long. Defense counsel had had the transcript for three months. The defendant said he'd been reading it every night in his cell for three years. He was clearly – I mean, again, when you read the record here, this defense attorney knew what was in that transcript. When you see what – when you see his objections on the first day, he knew what was in the transcript. And so he was fully cognizant of everything those police officers had said at the first trial. He has all that afternoon, all that night before the trial starts the next day to read less than 100 pages of transcript and to figure out how he is going to impeach these officers. That's all there is to do is impeach these officers with their prior testimony. And I think it's reasonable to say I already know this transcript. I can go back and reread their testimony tonight and impeach them any way they can. And that's exactly what he did. Does the record reflect whether the defense counsel was able to get in front of the jury that he had been surprised by this or the prosecution dropped it on him in opening statement? And how did he do that, through cross or through argument? I have not read the entire record yet. I'm not even – I believe the jury actually heard – I'm looking at my notes here – about the objection during opening statement. Objection was made in front of the jury? I think so. I mean, I think so. Okay. And then certainly in his cross-examination, which, by the way, the objection takes the discussion once the defense attorney says that this is what the evidence is going to show and the defense attorney pops up and says, wait a minute, it's done, right? And then they get into the discussion of this changed testimony. That discussion goes on, according to my notes here, for at least six pages of transcript. So there was a good deal of discussion about it. And then certainly the impeachment of the officers from their first testimony made it very clear to the jury that this happened. And so I think, yes, I think the jury was well aware that this was new evidence and that it was just kind of – I really think, you know, in ten minutes there's a limited amount of what we can say here. But I really found the case of Peeble v. Calvert very persuasive on this because a lot of similar issues were raised. And what it comes down to is that Calvert's court says there was little doubt – there was little that the defense could have done if advised of the statement earlier than was actually done at trial by the way of cross-examination. And that's basically what happened here. Was there a surprise that shouldn't have happened? Yes, there was. But was there a surprise that prejudiced the defendant and caused him, either through a discovery issue or through an ineffective assistance issue, to be deprived of fair trial? I don't think so. What was that case again of? Calvert. It's cited on page 7 of our brief. Calvert? Yeah. It is a discovery violation case, but its logic applies as directly to the issue of ineffective assistance of counsel as it does to the discovery violation. Any other questions? I don't think there are. Thank you, counsel. Counsel? This is the same question. Is your memory of the record whether defense counsel was able to demonstrate to the jury that he had been surprised that the state brought this out? Well, I know that he did object, and I know that they did move it back into chambers because I remember the judge saying, please keep your voice down because your voice can float out. You know, I remember him saying that. But the jury did see the initial objection. I don't think that they heard the explanation for the objection. Like, objection, that's not correct. I don't think that they heard that. Do you remember anything from closing argument as to if defense counsel was able to use that in addition to his cross-examination that they brought it up out of nowhere? No, I don't think that he brought up the fact that he was surprised. It was clear that there was a prior hearing because they kept mentioning the prior hearing, didn't you testify to this? But they didn't know that this was kind of a surprise. Okay. Counsel. Counsel keeps saying that all he could have done is to impeach at that point. I disagree with that. I think that initially what he could have done is asked for some sort of a discovery sanction, including having the evidence excluded altogether, in which case this would have knocked out a key piece of evidence. As I said before, this was the only piece of physical evidence that directly linked the defendant to the methamphetamine. I think that he also could have done more detailed impeachment. He could have, as I said before, mentioned you held the jars. How can you say that you didn't notice the difference then? And I think he could have asked them, how are you so sure that you can tell them apart now? Here we are two years down the road. You know, we're at the second trial, and you're saying that you can tell them apart better now than you could at the first hearing, and this is three years after the alleged offense. So I think the other thing is I think defense counsel needed this information. It was particularly important. He needed it in case he needed to change his theory of his defense. I'm guessing that the theory of defense was I was set up, but now it's hard to claim when your fingerprint is actually on the jar of methamphetamine that you were set up. I think that defense counsel basically had to conduct his investigation in the middle of trial and possibly ask questions that he didn't necessarily know the answer to. And counsel mentioned that it's possible that, you know, he did have that evening after the first day of trial where he, you know, had time to prepare for his cross-exam, and for all we know, he possibly even talked to these two officers and had time to do some investigation. But the point is we don't know that and we won't know that until we have an evidentiary hearing and we can get, you know, did you feel that you were prepared for cross-exam? If so, why didn't you ask them these key questions? If the court has no further questions, we ask that you come in for an evidentiary hearing. Thank you. I don't believe we do. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.